NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted March 26, 2008[*]
Decided March 31, 2008

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 07-3169

| | |
|---|---|
| GORDON B. DEMPSEY and GORDON B. DEMPSEY, P.C., | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *Plaintiffs-Appellants,* | |
| *v.* | No. 1:06-cv-0996-JDT-TAB |
| JP MORGAN CHASE BANK, N.A., | John D. Tinder, |
| *Defendant-Appellee.* | *Judge.* |

**O R D E R**

Gordon Dempsey filed this diversity suit based on Indiana law in Indiana state court, claiming principally that JP Morgan Chase Bank violated his mortgage agreement when it bought the mortgaged property at an execution sale and then evicted him. Chase removed the case to federal district court. *See* 28 U.S.C. § 1446. The district court dismissed

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

all but one of Dempsey's claims for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6). The district court remanded the remaining claim to the Indiana trial court because Dempsey lacked standing to pursue it in federal court. *See* 28 U.S.C. § 1447(c). Dempsey appeals. We conclude that the district court lacked jurisdiction to hear one of the claims that the court dismissed on its merits, but otherwise we affirm.

This lawsuit comes on the heels of six years of litigation between Dempsey and George and Oleva Carter, resulting in a six-figure judgment for the Carters. After Dempsey failed to satisfy that judgment, an Indiana court assessed a deficiency against Dempsey. To satisfy that deficiency, the Carters obtained a writ of execution for a piece of property owned by Dempsey on Kessler Boulevard in Indianapolis, Indiana ("the Kessler property"). In May 2005 the Indiana trial court entered a judgment that calculated the final amount of the deficiency, ordered the execution sale to proceed over Dempsey's objections, and invited any mortgagee to bid for the Kessler property at the sale, expressly authorizing such mortgagees to bid an amount equal to the mortgage debt. At the time, Chase held a mortgage interest in the Kessler property, and it bid the amount of the mortgage debt at the execution sale. Chase was the highest bidder and therefore purchased the Kessler property for the amount of its lien (thus resulting in no benefit to the Carters).

The Indiana court subsequently upheld the sale over Dempsey's numerous attempts to invalidate it. When Dempsey nonetheless refused to acquiesce to Chase's demand to move off the property, Chase obtained a writ of assistance to evict Dempsey. The Indiana court upheld the issuance of the writ over Dempsey's numerous attacks, and in July 2005 Chase executed the writ and evicted Dempsey from the Kessler property, along with his two tenants. Dempsey appealed to the Indiana Court of Appeals, challenging, among other things, the order and confirmation of the execution sale and the order issuing the writ of assistance. The court upheld each of these rulings in January 2007. *See Dempsey v. Carter*, No. 49A05-0510-CV-603, 2007 WL 114086 (Ind. Ct. App. Jan. 18, 2007) (unpublished decision). The Indiana Supreme Court denied transfer in June 2007.

In June 2006, while his appeal in the Carter lawsuit was pending, Dempsey filed this lawsuit against Chase in Indiana state court. Chase removed the case to the district court based on diversity jurisdiction, *see* 28 U.S.C. § 1446, and moved to dismiss the complaint for failure to state a claim, *see* FED. R. CIV. P. 12(b)(6). Dempsey's complaint and other filings are confusing, but the district court understood Dempsey to be making three claims: (1) breach of the mortgage agreement, (2) improper execution of the writ of assistance, and (3) violation of Dempsey's tenants' due process rights.

As to the mortgage agreement, Dempsey claimed that Chase breached it in two ways. First he claimed that Chase's purchase of the Kessler property for merely the value of

its lien violated the agreement, because, he said, it required Chase to protect his purported equity in the property in the event of an execution sale. Second Dempsey claimed that his eviction from the Kessler property violated the agreement because, again in his view, it required Chase to "keep the parties on track" with the loan—even in the event of a completed sale—by assigning the property back to him after the sale. Concerned that it lacked jurisdiction to hear these claims, the district court ordered supplemental briefing on the Rooker-Feldman doctrine. *See D.C. Ct. App. v. Feldman,* 460 U.S. 462, 476, 482-83 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 415-16 (1923). Chase responded that the Rooker-Feldman doctrine did not bar jurisdiction over the mortgage-agreement claims because Dempsey was taking issue with Chase's conduct—its bidding and its seeking to evict Dempsey—and not the sale itself. The district court concluded that the Rooker-Feldman doctrine presented no bar to the court's jurisdiction because, in the court's view, Dempsey's alleged injuries were based on his purported rights under the mortgage agreement and not on the state court's judgment ordering the sale. Instead, the district court determined that Dempsey was collaterally estopped from pursuing the claim, and that, in any event, it lacked merit.

The district court then easily disposed of Dempsey's two remaining claims. Dempsey claimed that Chase executed the writ of assistance in a commercially unreasonable manner when it refused to delay executing the writ for a few days to allow Dempsey to attend a family funeral. The district court dismissed this claim, concluding that it lacked merit as a matter of law. And lastly, Dempsey claimed that Chase violated the due process rights of his tenants by evicting them without a hearing. The district court determined that Dempsey lacked standing to pursue this claim and thus remanded it to the Indiana trial court. *See* 28 U.S.C. § 1447(c). Dempsey now appeals each of the district court's determinations.

We turn first to Dempsey's claim that Chase breached the mortgage agreement. Dempsey continues to assert that Chase's purchase of the property for the value of its lien violated the agreement, which, he says, required Chase to protect his purported equity in the Kessler property in the event of an execution sale. The district court's original inclination to dismiss this claim under the Rooker-Feldman doctrine for lack of jurisdiction was correct. Under the Rooker-Feldman doctrine, federal courts other than the Supreme Court of the United States lack subject-matter jurisdiction to review state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Feldman*, 460 U.S. at 476, 482-83; *Rooker,* 263 U.S. 413, 415-16. Barred are federal lawsuits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commence and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284; *see Holt v. Lake County Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005).

In attacking the price that Chase paid for the Kessler property, Dempsey is attacking the state court's order allowing the execution sale, which expressly authorized mortgagees like Chase to bid the value of their liens. *See generally* IND. CODE § 34-55-6-1 to 34-55-6-21; IND. TRIAL R. 69(A) ("Process to enforce a judgment or a decree for the payment of money shall be by writ of execution . . ."). It makes no difference for purposes of the Rooker-Feldman doctrine that his basis for doing so is a mortgage agreement; it is not the case that Dempsey was injured under the agreement prior to the sale and the state court simply failed to redress that injury. *See Holt,* 408 F.3d at 336; *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 557 (7th Cir. 1999); *Gary v. Geils,* 82 F.3d 1362, 1366-69 (7th Cir. 1996); *Ritter v. Ross,* 992 F.3d 750, 754 (7th Cir. 1993); *GASH Assocs. v. Vill. of. Rosemont, Ill.,* 995 F.2d 726, 728-29 (7th Cir. 1993). *Cf. Bolden v. City of Topeka, Kan.,* 441 F.3d 1129, 1132-34, 1142-45 (10th Cir. 2006) (party's claim that city violated his right to due process by ordering demolition of his property was not barred under Rooker-Feldman doctrine just because state court subsequently refused to enjoin demolition). Thus, the district court did not have subject-matter jurisdiction over Dempsey's mortgage-agreement claim to the extent it takes issue with Chase's purchase of the Kessler property, and we must vacate the district court's dismissal on the merits and instruct the district court to remand the claim to the Indiana court from which it was removed. *See* 28 U.S.C. § 1447(c).

Dempsey also presses his contention that the mortgage agreement required Chase to "keep the parties on track" with the loan by assigning the property back to him after the sale was completed. He relies upon the following language in the agreement:

> If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes with then bear interest at the rate charged under the Note from the date incurred or paid by the Lender to the date of repayment by Grantor.

We, like the district court, do not believe that the Rooker-Feldman doctrine bars federal jurisdiction over this claim because here Dempsey is not quarreling with the order of the sale. *See Exxon,* 544 U.S. at 284. And we also agree with the district court that Dempsey is collaterally estopped from pursuing the claim. Under Indiana law, which here, sitting in diversity, we must apply, *see State Farm Mut. Auto. Ins. Co. v. Pate,* 275 F.3d 666, 669 (7th Cir. 2001), collateral estoppel precludes a party from relitigating those issues already litigated and decided. *Doe v. Tobias,* 715 N.E.2d 829, 831 (Ind. 1999); *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.,* 185 F.3d 732, 739 (7th Cir. 1999). Courts must consider two factors in determining whether to apply collateral estoppel: "whether the party against whom the judgment is pled

had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances" of the particular case. *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1037 (Ind. 1993). During the Carter lawsuit, Dempsey pressed his theory that the mortgage agreement forbade Chase from evicting him at several stages during both the Indiana trial court and appellate court proceedings. The Indiana trial court nonetheless issued the writ of assistance authorizing Chase to evict Dempsey and refused to strike or stay the writ, and the Indiana Court of Appeals declined to revisit the issue. Thus, the requirements for precluding Dempsey from raising this claim have been met. Dempsey argues that the issue was not "fully litigated" because the Indiana Court of Appeals declined to address it on procedural grounds, namely his own failure to brief the issue properly. But Dempsey's own lack of diligence in prosecuting his appeal does not render the judgment non-final. In Indiana, a judgment is final even pending appeal, and retains its preclusive effect until it is reversed. *See Williams v. Maschmeyer*, 870 N.E.2d 1069, 1070-71 (Ind. Ct. App. 2007); *In re Estate of Nye*, 299 N.E.2d 854, 865-66 & n.22 (Ind. Ct. App. 1973).

In any event, we also agree with the district court that the claim is wholly without merit. Dempsey has provided no cogent reasoning or legal support for his belief that the language he cites in the mortgage agreement required Chase to assign the Kessler property back to him. That understanding makes no sense because it is tantamount to a requirement that Chase shelter Dempsey's assets from his judgment creditors. Contrary to Dempsey's nonsensical argument, the language Dempsey cites works in Chase's favor—allowing it to protect its interest in the event of an execution sale—not his.

We likewise agree with the district court that there is no merit to Dempsey's claim that the writ of assistance was executed unfairly because Chase refused to delay the eviction to allow Dempsey to attend a funeral. Dempsey has provided no support whatsoever for his contention that the writ must be executed in a commercially reasonable manner. "A writ of assistance is an equitable remedy used to transfer real property, the title of which has been previously adjudicated, as a means of enforcing the court's own decree" where the party that the writ is issued against has refused to obey that decree—like Dempsey did here. *See TeWalt v. TeWalt*, 421 N.E.2d 415, 418 (Ind. Ct. App. 1981); *see also* IND. R. TRIAL P. 70(A). Thus, it is not surprising that the sheriff has the "right and duty" to execute the writ immediately upon receiving it. 7 C.J.S. Writ of Assistance § 14. As the district court noted, "Dempsey could have avoided his trouble by moving out voluntarily and promptly when Chase obtained title to the property as opposed to forcing Chase to utilize the sheriff's department to enforce the court's decision."

Lastly, Dempsey appeals the district court's order remanding his claim that Chase violated his tenants' right to due process by evicting them without a hearing. But absent a narrow exception not applicable here, we do not have jurisdiction to review a district court

order remanding a claim for lack of subject-matter jurisdiction back to the state court from which it was removed. *See* 28 U.S.C. § 1447(d); *Powerex Corp. v. Reliant Energy Servs., Inc*, 127 S. Ct. 2411, 2416 (2007); *Foster v. Hill*, 497 F.3d 695, 697 (7th Cir. 2007). Because standing is a jurisdictional prerequisite, the district court's dismissal for lack of standing falls within § 1447(d). *See Lewis v. Casey,* 518 U.S. 343, 349, n.1 (1996); *Smith v. Wis. Dep't of Agric.,Trade and Consumer Prot.*, 23 F.3d 1134, 1142 (7th Cir. 1994). Thus, we dismiss Dempsey's appeal of the order remanding this claim.

That brings us to the issue of Chase's attorney's fees. Chase moved for its fees under Indiana Code § 34-52-1-1(b), which provides, among other things, for the payment of attorney's fees when a litigant has pursued a claim or defense that is frivolous, unreasonable, or groundless. *See* IND. CODE § 34-52-1-1(b). The district court determined that Dempsey failed to present a rational argument in support of either his mortgage-agreement claim or his execution-of-writ claim. The court thus awarded Chase the attorney's fees that it incurred defending these two claims, $30,562.

Dempsey does not challenge the amount of the fee award, but instead challenges only the district court's determination that his claims were in fact frivolous—a conclusion that we must review de novo. *See Lumbermens Mut. Cas. Co. v. Combs*, 873 N.E.2d 692, 722 (Ind. Ct. App. 2007); *Breining v. Harkness*, 872 N.E.2d 155, 161 (Ind. Ct. App. 2007). A claim may be deemed frivolous for purposes of IND. CODE § 34-52-1-1(b) if its proponent cannot make a good-faith and rational argument in support. *See Breining,* 872 N.E.2d at 161. Dempsey contends that the arguments he advanced on appeal demonstrate that the mortgage-agreement and execution-of writ claims at least were not frivolous. But we have already explained that Dempsey adduced no cogent reasoning or legal support for his claim that his eviction violated the mortgage agreement or that the writ was executed unreasonably. Thus, these claims fit squarely under Indiana's definition of a frivolous claim. But because we have concluded that the district court was without jurisdiction to hear Dempsey's claim that Chase's purchase of the Kessler property violated the mortgage agreement, the award of fees for defending this claim must be vacated.

Accordingly, the judgment dismissing Dempsey's mortgage-agreement claim, to the extent it is based on his eviction, and his execution-of-writ claim under Rule 12(b)(6) is AFFIRMED. We VACATE the district court's dismissal under Rule 12(b)(6) of Dempsey's mortgage-agreement claim to the extent it takes issue with Chase's purchase of the Kessler property, and REMAND the case to the district court so that it can remand this claim to the Indiana court from which it was removed. On remand the district court must recalculate the award of attorney's fees to Chase to reflect only its defense of the eviction and execution-of-writ claims. Dempsey's appeal of the order remanding his due process claim

to the Indiana court is DISMISSED. Finally, Chase's motion under Federal Rule of Appellate Procedure 38 for its appellate attorney's fees is DENIED.