ATTORNEY FOR APPELLANTS
R. Cordell Funk
Schererville, Indiana

ATTORNEY FOR APPELLEE
Sharon L. Stanzione
Merrillville, Indiana



FILED

Sep 01 2010, 12:22 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 45S03-1001-CV-33

SUZANNE EADS
AND JAMES ATTERHOLT, COMMISSIONER
OF THE INDIANA DEPARTMENT OF INSURANCE,

*Appellants (Respondents Below),*

v.

COMMUNITY HOSPITAL,

*Appellee (Petitioner Below).*

Appeal from the Lake Circuit Court, No. 45C01-0802-CT-00014
The Honorable Lorenzo Arredondo, Judge
The Honorable Richard F. McDevitt, Jr., Magistrate

On Petition to Transfer from the Indiana Court of Appeals, No. 45A03-0807-CV-350

**September 1, 2010**

**Boehm, Justice.**

A patient was injured leaving the hospital on crutches. She sued, asserting a general premises liability claim, and claiming the hospital was negligent in refusing her a wheelchair. The medical malpractice limitations period expired before her general negligence complaint was dismissed for failure to comply with the requirement of the Medical Malpractice Act that a medical malpractice complaint be filed with the Department of Insurance before it is presented to a court. We hold that under these circumstances a medical malpractice complaint alleging the same facts as the dismissed complaint may be deemed a continuation of the first complaint for purposes of the Journey's Account Statute.

**Factual and Procedural Background**

On August 15, 2004, Suzanne Eads's leg was placed in a cast at Community Hospital. Eads's request for a wheelchair was denied and she left the hospital on crutches, but fell attempting to exit the lobby. On August 8, 2006, Eads filed a premises liability negligence complaint in Lake Superior Court. The Hospital moved to dismiss for lack of jurisdiction, arguing that the complaint alleged medical malpractice, and no proposed complaint had been filed with the Indiana Department of Insurance (IDOI), as required by the Medical Malpractice Act (MMA). On April 12, 2007, the Superior Court dismissed the case without prejudice for failure to comply with this procedural requirement of the MMA. No appeal was taken.

On March 26, 2007, approximately two weeks before the Superior Court dismissed the complaint, Eads submitted a proposed complaint to IDOI based on the same circumstances alleged in the Superior Court complaint.[1] Eads explained to IDOI that the purpose of filing the complaint with IDOI was to preserve her right to bring her claim should the Superior Court case be dismissed. The Hospital responded by filing a motion in Lake Circuit Court for a preliminary determination of law under Indiana Code § 34-18-11-1 (1998), contending that the IDOI complaint was barred by the MMA's two-year statute of limitations. I.C. § 34-18-7-1(b). The Circuit Court granted the Hospital's motion for summary judgment, and Eads appealed, contending that the Journey's Account Statute (JAS), I.C. § 34-11-8-1(b), saved the IDOI complaint as a continuation of the Superior Court action. Eads v. Cmty. Hosp., 909 N.E.2d 1009, 1012 (Ind. Ct. App. 2009). The Court of Appeals affirmed, with Judge Kirsch dissenting. The majority concluded that a medical malpractice claim is different from a general negligence claim so the IDOI complaint was not a continuation of the original action and was therefore barred by the MMA's two-year statute of limitations. Id. at 1014. In a footnote, the majority observed that even if the JAS applied, the complaint was filed with the IDOI too late to preserve a medical malpractice claim. Id. at n.7. We granted transfer.

---

[1] The proposed IDOI complaint is identical to the Superior Court complaint except that the Superior Court complaint requested "judgment against the defendant in a sum that will reasonably compensate her for her damages and injuries," and the proposed IDOI complaint requested that the "medical review panel find that the defendant's failure to provide a wheelchair, fell below the appropriate standard of care to which Plaintiff was entitled."

**Standard of Review**

We review an appeal from summary judgment de novo. <u>Bules v. Marshall County</u>, 920 N.E.2d 247, 250 (Ind. 2010). Summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Indiana Trial Rule 56(C). All facts established by the designated evidence and inferences therefrom are to be construed in favor of the nonmoving party. <u>Dreaded, Inc. v. St. Paul Guardian Ins. Co.</u>, 904 N.E.2d 1267, 1270 (Ind. 2009). A defendant who asserts an affirmative statute of limitations defense must establish that the action was commenced after the limitation period has run. <u>Overton v. Grillo</u>, 896 N.E.2d 499, 502 (Ind. 2008). The burden then shifts to the plaintiff to show a material fact that precludes summary judgment. <u>Id.</u>

**The Journey's Account Statute and Medical Malpractice Claims**

The JAS provides in relevant part:

(a) This section applies if a plaintiff commences an action and:
    (1) the plaintiff fails in the action from any cause except negligence in the prosecution of the action;
    . . .
(b) If subsection (a) applies, a new action may be brought not later than the later of:
    (1) three (3) years after the date of the determination under subsection (a); or
    (2) the last date an action could have been commenced under the statute of limitations governing the original action;
and be considered a continuation of the original action by the plaintiff.

I.C. § 34-11-8-1. Thus, under some circumstances the JAS permits a filing after the applicable limitation period to be deemed a "continuation" of an earlier claim. Specifically, the JAS can revive a claim subject to the MMA. <u>Vesolowski v. Repay</u>, 520 N.E.2d 433, 435 (Ind. 1988). The JAS also applies in the cases of several other statutory schemes. <u>Willman v. Railing</u>, 571 N.E.2d 590, 592 (Ind. Ct. App. 1991) (Will Contest Statute); <u>City of Evansville v. Moore</u>, 563 N.E.2d 113, 115 (Ind. 1990) (Wrongful Death Act); <u>Ullom v. Midland Industries, Inc.</u>, 663 F. Supp. 491, 492 (S.D. Ind. 1987) (Products Liability Act).

To invoke the benefits of the JAS, a claimant must have commenced a timely action that failed for reasons other than "negligence in the prosecution." I.C. § 34-11-8-1(a). The

3

timeliness of Eads's first complaint and its failure are not in dispute.[2]  The Hospital, however, contends that Eads gets no relief from the JAS for two reasons:  The Superior Court complaint failed due to negligence in prosecuting the claim, and the IDOI complaint arises from a different claim that cannot be a "continuation" of the Superior Court claim.

The Hospital cites as instances of negligence failure to appeal the Superior Court dismissal, and filing a general negligence claim.  At oral argument before this court the Hospital suggested that because Eads did not appeal the dismissal of her complaint, she did not make an "unavailing effort to succeed," and therefore "voluntarily dismissed" her case.  The Hospital is correct that a voluntary dismissal of the earlier claim can preclude invocation of the JAS.  Al-Challah v. Barger Packaging, 820 N.E.2d 670, 673 (Ind. Ct. App. 2005); Ferdinand Furniture Co., Inc. v. R.M. Anderson, 399 N.E.2d 799, 803 (Ind. Ct. App. 1980); Pennsylvania Co. v. Good, 56 Ind. App. 562, 567–68, 103 N.E. 672, 674 (1913).  But we do not agree that failure to appeal the dismissal of the earlier action precludes invocation of the JAS.  Indeed, such a contention amounts to an implicit claim that the Superior Court erred in dismissing the claim before it.  Moreover, it is not negligent to fail to generate more delay and expense if the claimant reasonably concludes that the dismissal will likely be upheld.

Eads's original action also did not fail for "negligence in the prosecution" by reason of her filing initially as a premises liability claim.  The Hospital is correct that "negligence in the prosecution" is broader than its origin in "failure to . . . prosecute as required by Indiana Trial Rule 41(E)," and the term has been said to apply to "any failure of the action due to negligence in the prosecution."  Zambrana v. Anderson, 549 N.E.2d 1078, 1081 (Ind. Ct. App. 1990).  Examples of negligence in the prosecution beyond ordinary failure to prosecute are failure to pay the filing fee, Parks v. Madison County, 783 N.E.2d 711, 721 (Ind. Ct. App. 2002), and naming the wrong party. Zambrana, 549 N.E.2d at 1081.

There may be instances where the incorrect assertion of a general negligence claim is "negligence in the prosecution."  But we do not agree that dismissal of a general negligence claim for failure to comply with the MMA necessarily precludes application of the JAS.  As

---

[2] Eads filed her original claim in Superior Court within two years from the date of her fall.  She therefore was within the limitation periods applicable to general personal injury claims and claims for medical malpractice.  I.C. §§ 34-11-2-3, 34-11-2-4, 34-18-7-1.  The Superior Court's dismissal of Eads's original action for lack of subject matter jurisdiction was a "fail[ure] in the action" under the JAS.  I.C. § 34-11-8-1(a)(1).

4

Judge Kirsch noted in dissent, "[f]or more than thirty years, claimants and courts have wrestled with the question of what activities fall within the MMA." Eads, 909 N.E.2d at 1016. Examples of grey areas on the fringe of the MMA are found in Winona Memorial Foundation of Indianapolis v. Lomax, 465 N.E.2d 731, 733 (Ind. Ct. App. 1984) (injuries resulting from a patient's fall inside a hospital did not implicate the MMA), Pluard v. Patients Compensation Fund, 705 N.E.2d 1035, 1036 (Ind. Ct. App. 1999), trans. denied (injuries resulting from surgical lamp which fell after a nurse's adjustment did not implicate the MMA), and OB-GYN Assocs. of N. Ind. v. Ransbottom, 885 N.E.2d 734, 735 (Ind. Ct. App. 2008), trans. denied (burns resulting from cosmetic laser hair removal by a registered nurse did not implicate the MMA). Given this lack of clarity as to the precise boundaries of the MMA's application, it is not necessarily negligent to have failed to predict where the courts would come down on the application of the statute to a set of facts alleging negligence at the periphery of medical malpractice.

Though the JAS does not explicitly refer to good faith in the filing of the original action, Indiana courts have implied a good faith requirement. E.g., Basham v. Penick, 849 N.E.2d 706, 709 (Ind. Ct. App. 2006). For the same reason we do not find negligence in the prosecution, we are not persuaded that Eads exhibited bad faith when she filed her original claim sounding in general negligence.

The Hospital cites Mayfield v. Continental Rehabilitation Hospital of Terra Haute, 690 N.E.2d 738 (Ind. Ct. App. 1998), where the court found negligence in the prosecution precluded a proposed IDOI complaint for medical malpractice. The claim in that case related to a hospital's treatment of a patient in failing to restrain him while disoriented. In response to the motion to dismiss their original action, the plaintiffs offered to amend the complaint to limit recovery to $15,000 and qualify for the exception, provided by I.C. § 34-18-8-6, from the requirement to submit a medical malpractice complaint to the medical review panel. Mayfield, 690 N.E.2d at 740. This suggests that the plaintiffs believed their claim was governed by the MMA from the outset. Eads, on the other hand, opposed dismissal of her Superior Court case, arguing she asserted a general negligence claim. The Court of Appeals has found the MMA inapplicable where the plaintiff's care did not require "medical involvement." Ransbottom, 885 N.E.2d at 740. Eads could reasonably have concluded that her treatment for the ankle injury had ended, and there was no "medical involvement" in the nurse's decision not to provide a

5

wheelchair. If so, the facts could have supported a claim of general negligence, and asserting this claim is not "negligence in the prosecution."

The Hospital suggests that the proposed IDOI complaint cannot be the continuation of the general negligence claim because the IDOI claim seeks different relief. In the first place, the JAS uses "continuation" to describe what an action "be considered" if it meets the criteria of I.C. § 34-11-8-1(b) and the original action meets the criteria of I.C. § 34-11-8-1(a). A plaintiff invoking the benefit of the JAS is not required to prove the second complaint is a "continuation" of the first. The two must assert fundamentally the same claim, but whether one suit is a "continuation" of another is the result of meeting the test of subsections, (a) and (b), not the cause.

Although the complaints contain the same allegations of fact, the IDOI complaint asks for a determination of breach of the standard of care, and the Superior Court complaint requested damages. The Hospital cites Oelling v. Rao, 593 N.E.2d 189 (Ind. 1992), for the proposition that a medical malpractice complaint must mention a "requisite standard of care for medical providers, which is required in a medical malpractice action under Indiana law." But the language in Oelling does not refer to pleading requirements. It addresses the inadequacy of the plaintiff's affidavit contesting the defendant's motion for summary judgment, which was supported by a medical review panel's finding that the doctor complied with the requisite standard of care. Id. at 190. Moreover, the cases Oelling cites for this proposition, Burke v. Capello, 520 N.E.2d 439, 441 (Ind. 1988), overruled in part on an unrelated issue by Vergara v. Doan, 593 N.E.2d 185, 186 (Ind. 1992), and Miller v. Griesel, 261 Ind. 604, 611, 308 N.E.2d 701, 706 (1974), both dealt with sufficiency of the evidence establishing failure to meet the standard of care, not a higher pleading standard for medical malpractice claims.

Both complaints allege identical historical facts and assert as the basis of Eads's claim that the Hospital failed "to ensure that [Eads] has a safe means of egress." The Court of Appeals nevertheless agreed with the Hospital that the IDOI complaint was not a continuation of the action filed in Superior Court because the former was a claim of medical malpractice and the latter asserted general negligence. The Court of Appeals reasoned that although the facts and parties in the two complaints were the same, "the actual claim—the source of the alleged

6

liability—is wholly different." Eads, 909 N.E.2d at 1014.  We agree that a medical malpractice claim is in some respects, as the Court of Appeals put it, "wholly different" from a general negligence claim.  But we do not agree that the differences between the two are the "source of the liability."  The MMA does not create a new cause of action.  It merely requires that claims for medical malpractice that are recognized under tort law and applicable statutes be pursued through the procedures of the MMA.  Chamberlain v. Walpole, 822 N.E.2d 959, 963 (Ind. 2005).  The source of a medical malpractice claim remains basic tort law, which is the same as the source of a general negligence claim, and "[t]here are no more legal elements to the tort of doctor malpractice than there are to other negligence torts."  Burke, 520 N.E.2d at 441.  Finally, the JAS requires that the second action be brought not later than the later of three years after the termination of the first action or the limitation period applicable to "the original action," thus implying that there may be different limitation periods applicable to the two.  That is in fact the case here, where the two year general personal injury period is not limited to the occurrence based period applicable to medical malpractice claims.

The Court of Appeals relied on McGill v. Ling, 801 N.E.2d 678 (Ind. Ct. App. 2004), for the view that a medical malpractice claim is not a "continuation" of a general negligence case.  McGill is not the case before us today.  McGill held that the medical malpractice claim before it was not a continuation of attempted class action suits that had been dismissed.  But that does not imply that every complaint wrongly brought without compliance with the procedural requirements of the MMA is ineligible for resurrection by the JAS.  McGill arose from allegations that Orville Majors, a nurse at Vermillion County Hospital, had murdered a large number of patients over several years.  The complaint alleged a medical malpractice claim filed against several physicians, the hospital and its directors.  Like the IDOI complaint here, it was filed after the two-year statute of limitations had run, and the plaintiff claimed the benefit of the JAS based on failed attempts to bring federal and state class action claims of negligence, gross negligence, and Federal Civil Rights Act violations under 28 U.S.C. § 1983.  Apparently, the parties in the earlier cases were not the same as those in the new suit, and certainly the elements of a § 1983 claim or a gross negligence claim were different from the belated medical malpractice claim.  Here, Eads's new complaint changed no parties, facts or elements, and altered only the procedural requirements to assert the claim.  We conclude that the IDOI complaint proposes a continuation of the earlier Superior Court action.

7

Justice (then Judge) Cardozo observed that the important consideration in invoking savings statutes like the JAS, is that "a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts." Gaines v. City of New York, 109 N.E. 594, 596 (N.Y. 1915). Despite Eads's change to the "wherefore" clause in the IDOI complaint, the operative facts of the two complaints are identical and each complies with the requirements of notice pleading under Indiana Trial Rule 8. These facts gave the hospital enough detail "concerning the claim . . . so as to be able to prepare to meet it." Noblesville Redevelopment Comm'n v. Noblesville Assocs., 674 N.E.2d 558, 564 (Ind. 1996) (quoting Jack H. Friedenthal et al., Civil Procedure § 5.7, at 253 (2d ed. 1993)). The Hospital contends that this requirement was not met because apart from developing a legal defense the Hospital did not have notice of the financial exposure presented by the claim. The Hospital says it establishes reserves for claims sounding in general negligence differently than it establishes reserves for those sounding in medical malpractice. This may be true, but the MMA itself generally prohibits a request for specific damage awards in the proposed IDOI complaint. I.C. § 34-18-8-3. To the extent there is a difference in reserves due to the caps on medical malpractice recovery or other procedural differences in medical malpractice cases, these are matters of law that the Hospital is equipped to evaluate for itself.

Eads's IDOI claim was submitted two weeks before the original action failed. The Hospital argues that Eads's proposed IDOI complaint cannot be the continuation of a failed claim because the original action was still pending at the time she filed the IDOI complaint. Although the more common scenario involves the filing of a new action after a claim has failed, the statute does not require that sequence. The statute permits a "new action" to be brought "not later than the later of" three years after termination of the first action or the limitation period applicable to the first claim. I.C. § 34-11-8-1(b). This requirement is met whether the second claim is filed before or after the failure of the first, and we see no reason to imply a required sequence of these events. In Torres v. Parkview Foods, 468 N.E.2d 580 (Ind. Ct. App. 1984), the Court of Appeals had occasion to deal with a procedurally analogous situation. Torres originally brought suit for personal injuries in a federal court one day before the statute of limitations would run. Id. at 581. That suit was dismissed for lack of complete diversity. Id. Before dismissal, but after the tolling of the statute of limitations governing the injury, the Torreses filed the same claim in state court. The court "[found] it impossible to believe that [the] state action

8

should fail because it was brought <u>before</u> rather than after the original federal action . . . failed." <u>Id.</u> at 583 (emphasis in original). Given the language of the statute, the greater weight of the notice considerations <u>supra</u>, and the absence of bad faith on Eads's part discussed <u>supra</u>, we agree with <u>Torres</u> as to the handling of the procedural sequence here. Eads's IDOI claim, though brought before the failure of the IDOI claim, can be considered a continuation of the original claim.

## Conclusion

The trial court's grant of summary judgment is reversed.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.